IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLOTTE M. RODRIGUEZ, | : | |
| | : | Case No. 4:05-cv-0358 |
| Plaintiff, | : | |
| | : | (Judge Jones) |
| v. | : | |
| | : | |
| SULLIVAN COUNTY VICTIM SERVICES, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**June 29, 2005**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

On March 24, 2005 Plaintiff Charlotte M. Rodriguez ("Rodriguez" or "Plaintiff") filed a First Amended Complaint. (See Rec. Doc. 8). Defendant Sullivan County Victim Services ("SCVS" or "Defendant") now files a Second Motion to Dismiss (Rec. Doc. 10) seeking to dismiss Counts I, II, and III of the First Amended Complaint[1]  The Motion is now ripe for our review.

For the following reasons, we will grant Defendant's Motion and dismiss Counts I-III of the First Amended Complaint.

---

[1] Defendant's first Motion to Dismiss was denied as moot because it was superceded by Plaintiff's First Amended Complaint. (See Order of April 13, 2005, Rec. Doc. 9).

**STANDARD OF REVIEW:**

In considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d 310 (3d Cir. 1986).[2]

**STATEMENT OF FACTS:**

Plaintiff was employed as the Director of SCVS from June 2003 through September 21, 2004. At the time of her hire, SCVS informed Rodriguez that she was required to complete a six-month probationary period of employment. At the

---

[2] In its Motion, Defendant suggests that we construe its Motion as one actually seeking summary judgment. However, converting a Rule 12 motion to a Rule 56 motion is only appropriate when affidavits are attached to the motion. Here, Defendant's Motion makes reference only to an employee handbook, which Plaintiff had already attached to her amended complaint. Under these circumstances, we decline to convert the Motion and will construe it under Rule 12.

conclusion of that period, Plaintiff became the permanent director of SCVS and remained in that position until she was terminated on September 21, 2004. According to her letter of termination, she was fired because her job performance was "not meeting the needs of the Agency." (Cmplt. Ex. C, Rec. Doc. 8). Plaintiff has filed this action challenging that termination.

When hired, Plaintiff was given an employee handbook (the "Handbook"). (See Cmplt. Ex A, Rec. Doc. 8). The Handbook describes a permanent employee as an employee whose status "is based upon the planned duration of the position held by the employee." (Id. Ex. A at 6). However, the Handbook also states that:

> Pennsylvania is an 'employment at will' state. This means that as a Pennsylvania employer, SCVS **may terminate employment at the will and discretion of the organization**, with or without advance notice... .

Id. (emphasis added). The Handbook also includes procedures for "Corrective Action / Disciplinary Options" through which SCVS has created a procedure used to discipline employees. Id. Ex. B at 34. Finally, the Handbook set out reasons for which an employee may be dismissed, including "at any time for any reason not prohibited by law." Id.

Rodriguez contends that she was terminated for "insist[ing] upon strict adherence to ... confidentiality provisions" that SCVS was required to follow

pursuant to state law.  (Br. Opp. Mot. Dismiss at 4; Rec. Doc. 17).  Rodriguez also contends that her termination was a result of her attempts to enforce rules prohibiting employees from fundraising while at work, and that she made SCVS's Board of Directors aware of her strong position regarding these rules.

**DISCUSSION**

Our initial task is to determine the law applicable to Defendant's Motion.  Count I of the First Amended Complaint alleges wrongful discharge, Count II alleges breach of employment contract, and Count III alleges a violation of the implied covenant of good faith and fair dealing.  Count IV, alleging a violation of 42 U.S.C. § 1983, creates federal question jurisdiction.  However, all of the claims in Counts I, II, and III are state law claims and thus properly brought within this federal action pursuant to 28 U.S.C. § 1367, which provides federal courts with supplemental jurisdiction over state law claims.  As such, we apply the law of the Commonwealth of Pennsylvania to these counts.  Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).

In Pennsylvania, employees without a contract defining terms of their employment are considered at-will.  The Pennsylvania Supreme Court has repeatedly reaffirmed that "an employer 'may discharge an employee with or without cause, at pleasure, unless restrained by some contract." Henry v.

Pittsburgh & Lake Erie R. Co., 21 A. 157 (Pa. 1891); see also Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998). In our analysis of whether an individual's employment is at-will, the employee has the burden of demonstrating to the court that she has a contractual relationship with her employer. See Greene v. Oliver Realty Inc., 526 A.2d 1192 (Pa. Super. Ct. 2004)("The party claiming that an agreement is for a definite period has the burden of proving that fact.")(citing Geary, 319 A.2d at 176).

In its Motion, Defendant avers that Counts I, II, and III, to the extent that they construe Rodriguez's employment as anything other than at-will, must fail because she was an at-will employee for the entirety of her time at SVCS and because none of the narrow exceptions to the general rule created by the Pennsylvania Supreme Court as previously noted are applicable to her situation. We will review each of these contentions in turn.

    **A.**    **SCVS' Handbook and Its Effect on the Employment Relationship**

SCVS first contends that its Handbook did not create any manner of contractual relationship between the parties. Rodriguez disagrees, and argues both that if SCVS intended to terminate her employment, that it was bound by the disciplinary policy set forth in the Handbook and that the Handbook created an

employment contract between herself and SCVS.

In resolving these issues, we note that an "employee handbook does not overcome the 'at-will' presumption unless the handbook's language **clearly expresses** the employer's intent to do so." Grose v. Procter & Gamble Products, 866 A.2d 437 (Pa. Super. Ct. 2005)(citing Rutherfoord v. Presbyterian-University Hospital, 612 A.2d 500, 503 (Pa. Super. Ct. 1992)(emphasis added). Plaintiff, who as stated above has the burden of disproving her status as an at-will employee, is unable to direct us to any language in the Handbook which "clearly expresses" SCVS's intent to convert her employment from at-will to contract status. Rather, she states that "a **combination of factors** alleged in the Complaint gives [sic] rise to a *prima facie* showing of an intent on the part of the employer to supplant its at-will status with a contractual job protection for the plaintiff." (Br. Opp. Mot. Dismiss at 9, Rec. Doc. 17)(emphasis added).

In particular, Rodriguez directs our attention to the passages in the Handbook that indicate that she was designated a "permanent employee." Id. at 18. However, "[a] promise of 'permanent' or 'lifetime' employment is general insufficient to rebut the presumption of at will employment." Grose, 866 A.2d at 441 (quoting Gruenwald v. Advanced Computer Applications, Inc., 730 A.2d 1004, 1010 (Pa. Super. Ct. 1999)). Therefore, merely terming an employee

6

"permanent" is insufficient to create a contractual relationship. In fact, we find that contrary to Plaintiff's assertion that an employment contract was created, the language of the Handbook is quite cogent in reiterating that all employees, including Plaintiff, are at-will employees. As previously noted, the Handbook clearly states that "SCVS may terminate employment at the will and discretion of the organization, with or without advance notice...." (Cmplt. Ex. A at 6).

Next, Rodriguez argues that the Handbook displays SCVS's intention to limit the reasons that it could fire an employee. Specifically, although the Handbook states that SCVS could "dismiss an employee ... for any reason prohibited by law," Plaintiff believes that its termination process was controlled by the disciplinary procedure set forth within its Handbook. Rodriguez cannot point us to any case law stating either that SCVS was bound to follow the disciplinary policy set forth in the Handbook, or that the creation of a disciplinary policy converted Rodriguez's employment from at-will to contract status. Accordingly, we likewise reject this argument in support of the existence of an employment contract

Rodriguez would have us cherry-pick statements from the Handbook in order to cobble together an employment contract, but this request ignores our responsibility to find language that "clearly expresses" an intent to contract. As we

have determined that the Handbook is bereft of such language, we likewise conclude that none of the snippets suggested by Rodriguez evinces Defendant's "clear and definite intention" to contract with her for employment in a manner sufficient to overcome the at-will presumption. Id.

### B. Termination of an At-Will Employee

Having determined that the Handbook did not alter Rodriguez's status as an at-will employee, nor did it limit the reasons for which an at-will employee could be terminated, we turn to whether it is possible for an at-will employee to contest her termination as Plaintiff has attempted to do in Counts I, II, and III. As previously noted, "an employer may terminate an employee for any reason unless restrained by contract." McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 313 (Pa. 2000)(citing Henry, 21 A. at 157). Within its 1974 opinion in Geary v. United States Steel Corp., the Pennsylvania Supreme Court carved out an exception to the general rule that at-will employees could always be terminated for any reason. 319 A.2d 174 (Pa. 1974). This exception states that an employee can contest his termination only if it violated a "clear mandate of public policy." Id. at 180.

The Pennsylvania Supreme Court recently addressed the Geary exception and explained:

> From the[] cases, we glean that, as a general proposition, the

> presumption of all non-contractual employment relations is that it is *at-will* and that this presumption is an extremely strong one. An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited circumstances where termination implicates a **clear mandate of public policy** in this Commonwealth.

McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287 (Pa. 2000) (emphasis added).

To determine whether being fired for enforcing the Protection from Abuse Statute constitutes violation of a clear mandate of public policy "we examin[e] the precedent within Pennsylvania, looking to our own Constitution, court decisions, and statutes promulgated by our legislature." McLaughlin, 75 A.2d at 288 (citing Mamlin v. Genoe, 17 A.2d 407 (Pa. 1941)). In McLaughlin, the Supreme Court declined to apply the public policy exception where the possible violation "implicate[d] only her own personal interest." Id. at 289. The court further explained that a "[p]laintiff in some way must allege that *some* public policy of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee." Id.

Previously, courts have found exceptions to exist in only a limited number of situations where the termination itself was violative of public policy. For example, a public policy exception was found when a whistleblower was fired after reporting a

9

nuclear safety violation exactly as required by the Nuclear Regulatory Commission when there were penalties for individuals who failed to report such violations. Field v. Philadelphia Elec. Co., 565 A.2d 1170, 1180 (Pa. Super. Ct. 1989). An exception was also found where an employee was fired for serving on a jury because state law expressly forbids an employer from prohibiting its employees from serving on a jury. Reuther v. Fowler & Williams Inc., 386 A.2d 119 (Pa. Super. Ct. 1978).

In other cases, however, courts have not found the exception to exist, namely because the employees' terminations did not directly implicate a public policy. For example, an exception was not found to exist when an individual was terminated for reporting Medicare fraud. Spierling v. First American Home Health Svcs, 737 A.2d 1250 (Pa. Super. Ct.), aff'd 786 A.2d 989 (Pa. 2001). Similarly, the Superior Court in Carlson v. Community Ambulance Services, Inc. found that an individual who alleged that she was constructively discharged due to her pregnancy could not proceed under this exception because she "was not terminated, let alone terminated for filing a claim with the PHRC or EEOC." 824 A.2d 1228, 1232 (Pa. Super. Ct. 2003)(holding that an employee alleging pregnancy discrimination did not show that her termination violated a "clear mandate of public policy."). In Carlson, the court looked at whether the termination was directly a

result of an action involving public policy. It was not, and the employee's claims were accordingly dismissed.

We now turn to why Rodriguez contends that the public policy exception applies here. Rodriguez argues that she was terminated because she enforced the Pennsylvania Protection from Abuse Statute amongst the staff at SCVS. This statute provides, in relevant part, that:

> Unless a victim waives the privilege ... a domestic violence counselor / advocate or a co-participant who is present during domestic violence counseling / advocacy shall not be competent nor permitted to testify or to otherwise disclose confidential communications made to or by the counselor / advocate by or to a victim.

23 Pa. Cons. Stat. § 6116. Rodriguez alleges that she was fired for insisting that SCVS employees comply with this statute and that this contravenes a clear public policy. Specifically, she contends that her termination went against a "clear mandate of public policy" in the Commonwealth that prohibits disclosure of domestic abuse victim's confidential information. (Br. Opp. Mot. Dismiss at 6).

In all of the cases where the exception was found to exist, a court determined that the employee was faced a Hobson's choice of having to choose between, for example, reporting a certain violation, filing a workers' compensation claim, or serving on a jury and doing whatever his or her employer preferred. See Carlson, 824 A.2d at 1232 (the court distinguished the instant case by explaining that the

11

"appellant in Shick[v. Shirey, 716 A.2d 1231 (Pa. 1998)] was faced with a Hobson's choice of filing a claim and being terminated"). As the Spierling court explained:

> an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specially prohibited from doing so by statute.

Spierling, 737 A.2d 1252; see also Myers v. Wilkes Barre Twp, 204 F.Supp.2d 821, 826 (M.D.Pa. 2002)(holding that there was no public policy exception for an employer's failure to give a pre-termination hearing). Here, Rodriguez does not allege that she was faced with any of these three exceptions. Rather, her First Amended Complaint merely alleges that "Members of Defendant's Board of Directors took issue with Plaintiff's insistence upon strict confidentiality and, in fact, encouraged, Plaintiff and other of its employees to breach the confidentiality standards." (First Am. Cmplt. ¶ 22; Rec. Doc. 8). While she does allege that the Defendant preferred that its employees "breach the confidentiality standards" she fails to allege that she was faced with a Hobson's choice of enforcing the Protection from Abuse Act or losing her job.

Further, the Protection from Abuse Act was not itself violated by Rodriguez's termination. Assuming at this stage as we must that she was

terminated for enforcing the Protection from Abuse Act we do not believe that "there was [a] specific statutory scheme against [Rodriguez]'s discharge. Spierling, 737 A.2d at 1254. In Spierling, the plaintiff contested her at-will termination and contended that the public policy exception applied because she was terminated due to her having reported Medicare fraud. Writing for a divided court, former Superior Court Judge John R. Brosky explained that being terminated for reporting past Medicare fraud was not in violation of a clear public policy. Like the instant Plaintiff, the Spierling plaintiff was unable to point to a clear public policy that prohibited her termination. While it was undisputed that federal and state policy encouraged employees to report Medicare fraud, there was nothing within those policies prohibiting an employer for terminating an employee for reporting that fraud.[3] Similarly, here we have a state statute that clearly requires confidentiality in the domestic violence setting, but which does not in any way prohibit an employer from terminating someone who enforced this provision. In neither case did the termination itself violate a clear public policy.

Although Rodriguez states that Defendant's employees violated the

---

[3] We do note, however, then Superior Court Judge Schiller's dissent in Spearling, in which he stated, "I find it unconscionable on the even of the twenty-first century, that a well-regarded employee who has been told to report Medicare fraud can be summarily discharged for doing so simply because she is an an 'at-will' employee." Id.

Protection from Abuse Act, she does not allege that the public policy of the Commonwealth was at all undermined, violated, or implicated by her termination. Rather, she alleges that she was terminated because of her "insistence upon compliance with the rules and regulations which embody the public policy of the Commonwealth." Cmplt. ¶ 27. Under the case law, mere "insistence" is not enough. In all of the cases in which this narrow exception was applied, the terminated employee had taken substantive action, such as contacting the police or filing a formal complaint with a regulatory agency.

    Finally, we note the closely analogous case of Diberardinis-Mason v. Super Fresh, in which an employee claimed that she was terminated for reporting that fellow pharmacists had illegally dispensed prescriptions. 94 F.Supp.2d 626 (E.D.Pa. 2000). In holding that the public policy exception did not apply, Judge Dalzell explained that even though the employee felt "statutorily, professionally and ethically obligated to report all dispensing irregularities" the court was unable to find in the relevant statutes any "affirmative duty to report suspicious behavior to the authorities." Id. at 632. Further, Judge Dalzell noted that the public policy exception is extremely narrow and as such he explained that the courts should not "take it upon ourselves to read in such a duty absent Pennsylvania case authority." Id.

Like the Diberardinis-Mason plaintiff, Rodriguez no doubt felt obligated to enforce the confidentiality provision of the Protection from Abuse Act. However, we see no language within that statute mandating that she prevent others from violating its terms such that her termination for doing so would be violative of that Act. Rather, she apparently felt obligated to enforce the Act due to her role as director of SCVS. Nonetheless, despite her beliefs, we are permitted to apply the public policy exception only when a "clear mandate of public policy" has been violated by the employee's termination. Since Rodriguez shows neither that she was faced with the aforesaid Hobson's choice nor that she was required to report and/or prohibit violations of the Act by others, we cannot find that the public policy exception applies.[4]

Therefore, we find that Plaintiff cannot avail herself of the narrow public policy exception which would allow her to contest the termination of her at-will employment.

### C.   Conclusion

Therefore, we find that Counts I and II, alleging breach of contract and

---

[4] Rodriguez also contends that her termination in part stemmed from her prohibiting SCVS employees from engaging in fundraising while they were working. Rodriguez fails to suggest how being terminated for establishing this rule violates a public policy in Pennsylvania, such that it would not come within the ambit of the exception. Accordingly, we find this additional argument in support of activating the narrow public policy exception unavailing as well.

wrongful discharge must necessarily fail because Plaintiff is an at-will employee who is unable to challenge her termination under Pennsylvania law either by creating a presumption that a contract existed between herself and the Defendant or via the narrow public policy exception.  Likewise, Count III, alleging breach of the implied covenant of good faith and fair dealing must also be dismissed.  This count, by its very nature, can only be pled in an action premised on an employment contract, which contract we have determined does not exist here.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendant's Second Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Rec. Doc. 10) is GRANTED.

2. Counts I, II, and III of Plaintiff's First Amended Complaint (Rec. Doc. 8) are DISMISSED with prejudice.

3. Defendant shall file an answer to the remaining counts in Plaintiff's First Amended Complaint (Rec. Doc. 8) within twenty (20) days pursuant to Fed. R. Civ. P. 12(a)(1)(A).

　　　　　　　　　　　　　　　　　　 s/ John E. Jones III

                                      John E. Jones III
                                      United States District Judge