IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLOTTE M. RODRIGUEZ, | : | |
|     Plaintiff, | : | CIVIL NO.  4:CV-05-cv-358 |
| | : | |
| | : | Judge Jones |
|     v. | : | |
| | : | |
| SULLIVAN COUNTY VICTIM | : | |
| SERVICES, | : | |
|     Defendant. | : | |

# MEMORANDUM AND ORDER

## April 12, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is Defendant's, Sullivan County Victim Services ("Defendant" or "SCVS"), Motion Summary Judgment ("the Motion") (doc. 27) filed on March 1, 2006.

For the following reasons, we will grant the Motion.

**STATEMENT OF MATERIAL FACTS:**

Plaintiff, Charlotte Rodriguez ("Plaintiff" or "Rodriguez"), was employed as Director of SCVS beginning in June, 2003.  SCVS, a Pennsylvania non-profit corporation, was incorporated on May 31, 1993 pursuant to the Non-Profit Corporation Law of 1988, in order to provide counseling and other related services

to victims of domestic violence, sexual assault and other crimes. (Rec. Doc. 28 at 1). Thereafter, on December 15, 1993, SCVS filed Amended Articles of Incorporation with the Commonwealth pursuant to which SCVS remained "organized exclusively for charitable, religious, educational and scientific purposes . . ." (Rec. Doc. 28 at 2). SCVS was formed to further the legislative purpose of the Pennsylvania Protection From Abuse Act ("the PPFAA"), 23 Pa. Const. Stat. §6101, *et seq.*, enacted on December 19, 1990.

Pursuant to the by-laws, SCVS, operating through its Board of Directors, "provides support and sanctuary from stress and violence for victims and their children, including, but not limited to:

> Informing victims of the resources available to them, providing 24 hour hot-line service, providing counseling and legal advocacy, assisting with transportation and shelter provisions and educating and sensitizing the general public as well as government officials, policy makers and appropriate professionals about the causes, effects and means of preventing domestic violence and sexual assault.

(Rec. Doc. 28 at 2). Also pursuant to the by-laws, the program director shall be employed by the Board of Directors and "shall direct and delegate all activities and affairs for Victim Services and report to the Board of Directors as required." (Rec. Doc. 28 at 2).

At all times material to this action, the total operating budget of SCVS

was approximately $200,000.00 per year.  Of that amount, SVCS received state and federal funds totaling approximately $185,000.00 per year as a result of direct grants from the Pennsylvania Coalition Against Domestic Violence, the Pennsylvania Commission on Crime and Delinquency, and the Pennsylvania Coalition Against Rape.  Also, SCVS received approximately $10,000.00 per year to conduct parenting classes from Sullivan County Children and Youth and to sponsor drug and alcohol education/prevention classes from Bradford and Sullivan Counties.  The remaining revenue was derived from private fundraising activities and/or donations amounting to approximately $5,000.00 per year.  (Rec. Doc. 32 at 2-3).

In the fall of 2003, Pennsylvania State Police Corporal Snyder ("Snyder") visited Plaintiff's office and demanded that she disclose to him the current location of a client of SVCS who had applied for a protection from abuse order.  Plaintiff refused to provide him with the requested information because the information was confidential, pursuant to the PPFAA.  After this confrontation with Snyder, which Plaintiff alleges was somewhat hostile, the Plaintiff informed Joan Gruver ("Gruver"), a SCVS Board member about the incident. (Rec. Docs. 28 at 3; 32 at 3).

Plaintiff alleges that Gruver and fellow Board member Winifred

Ferguson ("Ferguson") pressed Plaintiff to allow some exceptions to SCVS's confidentiality policy, so that the requested information could be provided to Snyder, in order to further a healthy working relationship between SCVS and the Pennsylvania State Police. Plaintiff alleges that "Gruver and Ferguson left [her] with the feeling that it was very very important for her to find some way to accommodate the police." (Rec. Doc. 31 at 3). Plaintiff alleges that Ferguson was concerned and upset by Plaintiff's failure to divulge the information to Snyder. Further, Plaintiff alleges that she continued to be pressured to release confidential information through 2004. (Rec. Doc. 31 at 3-4).

Plaintiff alleges that in the summer of 2004, Gruver asked Plaintiff if there was a way that Mary, a counselor with SVCS, could disclose confidential information to Children and Youth Services in breach of the PPFAA's confidentiality provisions.[1] Plaintiff did not divulge the requested information, despite protestations by Gruver and Ferguson. Plaintiff alleges that at a Board meeting in August 2004, Gruver "flat out accused [Plaintiff] of not caring about children." (Rec. Docs. 31 at 4; 32 at 4).

---

[1] By way of background Plaintiff informs the Court that a mother had sought services through SVCS and engaged in confidential communications with a counselor named Mary. Children and Youth Services planned to move in Court to terminate that client's parental rights and sought to obtain the confidential information from SVCS to aid in that termination effort.

Plaintiff further alleges that she was asked by members of the SVCS Board of Directors to participate in fundraising activities during work hours, in violation of certain grant provisions. (Rec. Doc. 28 at 5). Plaintiff alleges that Board Member Feister ("Feister") told Plaintiff at a Board meeting that it was within Plaintiff's power to "just order people to be present" at a golf tournament fundraiser, even though it was a violation of conditions set forth in grants received by SCVS. Plaintiff alleges that Feister became very upset with her and, as a result, Feister did not attend Board meetings for six or seven months after that incident. Plaintiff alleges that in August of 2004, Gruver bypassed Plaintiff and assigned another employee of SCVS to several fundraising activities during that employee's regular work hours. Plaintiff herself never participated in fundraising activities during work hours. (Rec. Docs. 31 at 6-7; 28 at 5).

On September 20, 2004, an emergency meeting of the SCVS Board of Directors was held, during which the decision to terminate Plaintiff's employment was reached. Plaintiff alleges that no minutes were taken at this meeting. Plaintiff alleges that she was terminated because she insisted upon strict compliance with the statutory rules of confidentiality and strict compliance with grant rules prohibiting employees from engaging in

fundraising during regular work hours. She states that prior to her termination, in July of 2004, she was given an evaluation stating she was exceeding the requirements of her job, and then without further notice, warning, discipline, or reprimand of any kind, she was dismissed. (Rec. Doc. 31 at 8-9). Defendant alleges that Plaintiff was fired because she exhibited a lack of leadership, lack of management skills and a lack of respect for individuals within SCVS.(Rec. Doc. 28 at 5).

**PROCEDURAL HISTORY**:

In Plaintiff's first amended complaint (doc. 8), she alleged counts for wrongful discharge (Count I), breach of contract of employment (Count II), implied covenant of good faith and fair dealing (Count III), violation of First Amendment Rights under Section 1983 of the Civil Rights Act (Count IV) and a cause of action under the Pennsylvania Whistleblower Law (Count VI). Plaintiff also requested attorney's fees (Count V) related to her §1983. By Order dated June 29, 2005 (doc. 18), this Court granted Defendant's Second Motion to Dismiss and thereby dismissed Counts I, II and III with prejudice.

Thereafter, the Defendant filed the instant Motion on March 1, 2006. The Motion has been fully briefed by the parties and is therefore ripe for our review.

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed .R. Civ. P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The

7

United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**DISCUSSION**:

The Defendant moves this Court to grant summary judgment in favor of it and against Plaintiff on the remaining §1983 claim and Pennsylvania Whistleblower Law claim.[2] We shall analyze each claim under the appropriate summary judgment standard in turn.

### A.   §1983 Claim

Plaintiff argues that SCVS is a state actor and that it acted under color of law when it discharged the Plaintiff in alleged violation of her federally protected rights under the First Amendment. Plaintiff asserts that SCVS was incorporated to serve the goals of the PPFAA, 23 Pa. Const. Stat. § 6101, *et seq.* The PPFAA provides a specific privilege for communications between sexual assault counselors and their client victims. See 23 Pa. Const. Stat §6102(a). Plaintiff alleges that her strict adherence to this statutorily provided privilege caused her to be fired. Defendant argues that Plaintiff's §1983 claim cannot survive the instant Motion because SCVS is not a state actor and therefore cannot be subject to §1983

---

[2] In the event we do grant summary judgment in favor of Defendant on Plaintiff's §1983 claim, Defendant accurately submits that Plaintiff's ancillary cause of action for attorney's fees must also be dismissed.

liability for an alleged constitutional violation.

To prevail on a §1983 claim, a plaintiff must establish (1) that she was deprived of a federally protected right; and (2) that the deprivation was committed by a state actor.  See Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997).  As the Supreme Court noted in Rendell-Baker v. Kohn, 457 U.S. 830(1982):

> the ultimate issue in determining whether a [defendant] is subject to suit under §1983 is the same question in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?' If the action . . . is not state action, our inquiry ends.

Id. at 839 (internal citation omitted).  "A State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice in law must be deemed to be that of the State." Id. at 840 (citing Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).

It is well-established by the Supreme Court that "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the state for purposes of the Fourteenth Amendment." American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 52 (1999)(citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350 (1974)).  Moreover, the fact that a private entity performs a function that

serves the public does not make that entity's actions governmental action. The relevant question is whether the function performed is "traditionally the exclusive prerogative of the state." Rendell-Baker, 457 U.S. at 842 (citing Jackson, 419 U.S. at 353).

The Rendell-Baker Court held that a privately operated school that received state funding did not act under color of state law when it discharged various employees. The New Perspectives School was a non-profit school that accepted special needs students referred by the state and by private individuals. The school received funding from state and federal agencies, and public funds had comprised approximately 90% of the school's operating budget. The school was also subject to state regulation. In holding that the New Perspective School was not a state actor, the Supreme Court noted that the school was not "fundamentally different from many private corporations whose business depends primarily on [public] contracts . . . Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." Id. at 841. The Supreme Court also noted that the non-intrusive state regulation of personnel did not make the private management's decision to discharge the employees a state action. See id.

at 842. Moreover, the Supreme Court held that "that a private entity performs a function which serves the public does not make its acts state action." Id.

Plaintiff argues that SCVS is a state actor because approximately $195,000.00 of its $200,000.00 annual budget is derived from state and federal funding. However, as noted by the Rendell-Baker Court, a mere showing of federal or state funding does not, in and of itself, render an entity a state actor. Plaintiff further argues that SCVS was enacted to implement the counseling and advocacy provision of the PPFAA and the Commonwealth regulates Defendant's employees by requiring them to obtain a minimum number of training hours before they qualify as counselors or advocates. Similar to the state's regulation of the school in Rendell-Baker, we find the Commonwealth's regulation of SCVS is minimally intrusive upon personnel. Moreover, the mere fact that SCVS functions to benefit the public does not make its actions governmental actions potentially subject to §1983 liability. To be sure, nothing in the record indicates that the Board's termination of Plaintiff was anything but a private, internal, managerial decision of the governing body of a non-profit corporation

Accordingly, because we find that SCVS is not a state actor it therefore cannot be subject to §1983 liability and therefore, we will grant summary judgment on Count IV of the first amended complaint in favor of the Defendant. In light of this holding, we shall also dismiss the Plaintiff's related cause of action for attorney's fees.

**B.     Pennsylvania Whistleblower Law Claim**

The Pennsylvania Whistleblower Law defines a whistleblower as "a person who witnesses or who has evidence of wrongdoing . . . and who makes a good faith report of the wrongdoing . . . verbally or in writing, to one of the person's superiors . . ." 43 Pa. Const. Stat. §1422. An employer violates the statute if it discharges an employee because he or she made a good faith report of wrongdoing to the employee's superior. See 43 Pa. Const. Stat. §1423. In order to establish a cause of action for retaliatory discharge under the Whistleblower Law, the "employee must allege that prior to discharge, he [or she] made a good faith report of his employer's waste or wrongdoing to the appropriate authorities and was discharged in reprisal for that report." Lutz v. Springettsbury Twp., 667 A.2d 251 (Pa. Cmwth. 1995). "Wrongdoing" is defined by the statute as "a violation which is not merely of a technical or minimal nature of a Federal or State

statute or regulation . . ." 43 Pa. Const. Stat. §1422. "The definition of wrongdoing does not include potential violations of statute or regulations. It includes only actual violations." Morgan v. Rossi, 1998 U.S. Dist. LEXIS 5087, *26 (E.D. Pa. 1998).

Plaintiff asserts her termination was a direct result of reports she made to the Board of Directors about attempts made by the Pennsylvania State Police and Children and Youth Services to extract confidential information from her in violation of the PPFAA. Defendant argues that Plaintiff cannot make out a prima facie case under the Pennsylvania Whistelblower statute because no wrongdoing occurred.

We agree with Defendant that Plaintiff cannot establish a prima facie case under the Whistleblower Law because no wrongdoing occurred. While the Pennsylvania State Police and Children and Youth Services may have attempted to persuade Plaintiff to breach statutorily recognized confidentiality provisions, Plaintiff did not succumb to their entreaties. No statutory violation occurred. Therefore, at best from the Plaintiff's perspective only attempted wrongdoing occurred, and any reporting of this conduct by Plaintiff to her superiors cannot be considered "whistleblowing" as contemplated by the statute.

Accordingly, we will grant summary judgment in favor of Defendant on Count VI of the first amended complaint.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion for Summary Judgment by Defendant (doc. 27) is GRANTED.

2. Summary Judgment is granted in favor of DEFENDANT on Counts IV and VI.

3. Count V is DISMISSED.

4. The Clerk is directed to close the file on this case.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge